UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| KIMAR FRASER, | |
| Plaintiff, | |
| -against- | **INITIAL REVIEW ORDER RE: AMENDED COMPLAINT** |
| HALLMARK, *et al.*, | |
| Defendants. | 24-CV-63 (VDO) |

---

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Kimar Fraser, a sentenced inmate incarcerated at Cheshire Correctional Institution in Cheshire, Connecticut, filed this case *pro se* pursuant to 42 U.S.C. § 1983 against three defendants: Correctional Officers Hallmark, Wade, and Lopez. On February 27, 2024, the Court filed an Initial Review Order dismissing the complaint without prejudice to Plaintiff filing an amended complaint to correct the identified deficiencies in his Eighth Amendment claim for deliberate indifference to serious medical needs. Plaintiff now has filed an amended complaint elaborating on the allegations supporting his claim.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915(b). The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

I.      **FACTUAL BACKGROUND**

On January 22, 2021, while he was confined at Northern Correctional Institution, Plaintiff was struck by a hydraulic sally-port door controlled by Officer Wade. ECF No. 13 ¶¶ 3-4. At the time, Plaintiff was in full restraints, consisting of leg shackles and handcuffs connected with a tether chain, while being escorted by Officers Hallmark and Lopez. *Id.* Plaintiff immediately complained of pain in his back and right shoulder, but Officer Hallmark said Plaintiff would be "okay: and would not call the medical unit. *Id.* ¶ 5.

Plaintiff signed up for sick call and was examined "about a week later." *Id.* ¶ 6. Plaintiff was prescribed pain medication and alleges that he continues to be treated for his injuries to the present. *Id.* ¶ 7. Plaintiff believes that he requires spinal surgery as he still is being treated for the injuries. *Id.* ¶ 12.

Defendants failed to file an incident report until after Plaintiff notified their supervisors. *Id.* ¶ 8. Plaintiff has attached a copy of the report to his amended complaint. The report states that video surveillance footage appears to show that the door may have made slight contact with Plaintiff but did not strike him. *Id.* at 21.

Plaintiff also submits a copy of the medical incident report. *Id.* at 25. Plaintiff was examined by a doctor who assessed Plaintiff's claimed injuries to his ankle, right arm, and spine. The doctor ordered x-rays and prescribed pain medication before releasing Plaintiff to return to general population. *Id.*

II.     **LEGAL STANDARD**

Under 28 U.S.C. § 1915A, courts must review prisoner civil complaints in which a prisoner seeks redress from a government entity and dismiss any portion that "(1) is frivolous,

2

malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2). Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir .2011) (internal quotation marks omitted). However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (per curiam) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006)). However, *pro se* litigants are still required to comply with Rule 8 of the Federal Rules of Civil Procedure. *See, e.g., Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and

counseled plaintiffs alike."). Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and provide "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original). A statement of claim that is not short and direct places "an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Harden v. Doe*, No. 19-CV-3839(CM), 2019 WL 2578157, at *2 (S.D.N.Y. June 24, 2019) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (internal quotation marks and citation omitted).

### III.   DISCUSSION

Although Plaintiff was permitted to amend his complaint only as to the claim that Defendants were deliberately indifference to his serious medical need by failing to contact the medical unit after the incident in violation of the Eighth Amendment, he asserts several claims in the amended complaint. Plaintiff now asserts claims against Officer Wade for negligently striking him with the sally-port door and not contacting medical staff, and against Officers Hallmark and Lopez for gross negligence in failing to protect him from being struck by the door and for failing to contact the medical staff.

#### A.   Deliberate Indifference to Medical Needs

Plaintiff's claims for failing to contact medical staff are claims for deliberate indifference to medical needs in violation of the Eighth Amendment. To state a plausible claim, Plaintiff must allege facts "showing the offending official's 'deliberate indifference to [his] serious medical needs.'" *Thomas v. Wolf*, 832 F. App'x 90, 92 (2d Cir. 2020) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). There are two elements to a claim for deliberate indifference to medical needs. The first element is objective. The inmate must "show that he was 'actually deprived of

adequate medical care' by an official's failure 'to take reasonable measures in response to a [sufficiently serious] medical condition.'" *Id.* (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) (internal quotation marks omitted)). Establishing an objectively serious deprivation requires the court to make two separate inquiries. First, the court must determine whether the inmate "was actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279. The medical providers are only required to have "act[ed] reasonably." *Id.* The second inquiry requires the court to determine "whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id*. at 280. Thus, although the objective element sometimes is referred to as the seriousness of the medical need, that is only one factor evaluated in determining the seriousness of the deprivation of medical care. *See Id.*

If the claim is for denial of any treatment, the court will consider "whether the inmate's medical condition is sufficiently serious." *Id.* A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that

5

significantly affects the individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

If, however, the claim is for a delay in treatment, the court focuses on the challenged delay rather than merely on the underlying medical condition to determine whether the alleged deprivation is sufficiently serious. The court considers "the seriousness of the particular risk of harm that resulted from 'the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Bellotto v. County of Orange*, 248 F. App'x 232, 236 (2d Cir. 2007) (quoting *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003)). "A delay in treatment does not violate the constitution unless it involved an act or failure to act that evinces "a conscious disregard of a substantial risk of serious harm." *Rodriguez v. Doe*, No. 3:22-CV-763(MPS), 2023 WL 184253, at *3 (D. Conn. Jan. 13, 2023) (citations and internal quotation marks omitted).

The second element is subjective. The inmate must show "that the official acted with a culpable state of mind of 'subjective recklessness,' such that the official knew of and consciously disregarded 'an excessive risk to inmate health or safety.'" *Wolf,* 832 F. App'x at 92 (citations omitted). Allegations constituting negligence or medical malpractice are insufficient to support an Eighth Amendment deliberate indifference claim. *Id.* (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("mere negligence' is insufficient to state a claim for deliberate indifference).

Plaintiff alleges that he requested immediate medical attention when he was struck by the door, but defendant Hallmark specifically refused, and no defendant called the medical unit. He further alleges, however, that he signed up for sick call and was treated for his injuries

"almost a week later." ECF No. 13 ¶6. Thus, his claim against defendants is for a delay in treatment for about a week.

Defendants are non-medical staff. The Second Circuit considers a delay in providing medical treatment by non-medical staff to be deliberate indifference where "for example, officials deliberately delayed care as a form of punishment, ... ignored a life-threatening and fast-degenerating condition[,]" or where the delay in medical treatment was so lengthy as to be considered "egregious." *Medina v. Sheehan*, No. 9:16-CV-1284(TJM/DEP), 2018 WL 7460016, at *7 (N.D.N.Y. Dec. 21, 2018) (quoting *Demata v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233, at *2 (2d Cir. 1999) (table) (internal quotation marks omitted), *report and recommendation adopted sub nom. Medina v. Sgt. Sheehan*, 2019 WL 955004 (N.D.N.Y. Feb. 27, 2019); *see also Durmel v. Westchester Cnty.*, No. 19-CV-2161(KMK), 2021 WL 738365, at *10-11 (S.D.N.Y. Feb. 25, 2021) (deliberate-indifference claim against nonmedical personnel requires that inmate prove that nonmedical prison personnel intentionally delayed access to medical care when the inmate was in extreme pain and had made his medical problems known to them) (citation omitted) (citing cases).

Plaintiff alleges only that he was hit by the sally-port door on his back and shoulder and "complained of pain." ECF No. 13 ¶ 5. He still does not describe the extent of his injuries. He assumes that, as he continues to be treated for his injuries, he now required spinal surgery. Even if the Court were to assume, for purposes of initial review, that Plaintiff has plausibly stated that he has a serious underlying medical need, this claim is for a delay in treatment. The Court must consider the effect of that delay, not the underlying condition standing alone. *See Bellotto v. County of Orange*, 248 F. App'x 232, 236 (2d Cir. 2007) ("When a prisoner alleges a temporary delay ... in the provision of otherwise adequate medical treatment, we focus on the

seriousness of the particular risk of harm that resulted from the challenged delay ... rather than the prisoner's underlying medical condition alone."). Plaintiff still alleges no facts suggesting that the delay in obtaining treatment exacerbated his injuries. Thus, he fails to meet the objective component of the deliberate indifference test and, again, fails to allege a plausible claim for deliberate indifference to serious medical needs. *See Stewart v. City of New York*, No. 15-CV-4335, 2018 WL 1633819, at *8-9 (S.D.N.Y. Mar. 31, 2018) (dismissing deliberate indifference claim where plaintiff did not allege that the defendant "acted intentionally to delay the provision of medical treatment in a way that subjected [the plaintiff] to an excessive risk of harm"). This claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

    **B.**    **Deliberate Indifference to Safety**

Plaintiff contends that Officers Hallmark and Lopez failed to protect him from being struck by the door. This claim may liberally be construed as an Eighth Amendment claim for deliberate indifference to safety.

To state a claim for deliberate indifference to safety, Plaintiff must allege fact showing that he was confined under conditions that posed a substantial risk of serious harm and that the defendants both knew that he faced a substantial risk of serious harm and failed to take reasonable actions to abate or avert the harm. *See Lewis v. Swicki*, 629 F. App'x 77, 79 (2d Cir. 2015) (citing *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)). There is no "bright line test" to determine whether a risk of serious harm is "substantial" for Eighth Amendment purposes. *See Lewis v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019). The court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *i.e.*, "the prisoner must show that the risk of which he complains is not one that today's society

8

chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original). The defendants' actions must be more than merely negligent. *See Salahuddin*, 467 F.3d at 280.

Plaintiff's claim involves one isolated incident. Officer Wade started to close the sally-port door after one officer passed through and before Officers Hallmark and Lopez also passed through with Plaintiff. The incident reports provided by Plaintiff indicate that, when Officer Wade saw Plaintiff in the doorway, he reopened the door. The incident reports also indicate that Officers Hallmark and Lopez moved to stop the door from closing on Plaintiff. See ECF No. 13 at 21-24. The facts alleged show that this was an accident, not an ongoing condition that posed serious harm to Plaintiff. Escorting a prisoner through a correctional facility where such an accident might occur does not violate contemporary standards of decency. *See Gurierrez-Pinto v. Annucci*, No. 20-CV-4490(CS), 2022 WL 523628, at *5 (S.D.N.Y. Feb. 22, 2022) ("Courts in this Circuit routinely find that an accident, even if arising from a risky condition, does not rise to the level of a sufficiently serious deprivation."), *aff'd sub nom. Gutierrez-Pinto v. Rappa*, 2023 WL 2396732 (2d Cir. Mar. 8, 2023); *see also Hylton v. Fed. Bureau of Prisons*, No. 00-CV-5747, 2002 WL 720605, at *3 (E.D.N.Y. Mar. 11, 2002) ("To meet this high objective standard, [the prisoner] must plead more than the fact that he was injured .... He must plead circumstances—for example, recurring serious injuries to prisoners ...—sufficient to support an inference that the challenged conditions were so obviously hazardous as to constitute cruel and unusual punishment."). Plaintiff fails to allege facts supporting a plausible claim for deliberate indifference to safety and the claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## IV.   CONCLUSION

All Eighth Amendment claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). As all federal law claims have been dismissed, the Court declines to exercise supplemental

jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c) (district court may decline to exercise supplemental jurisdiction over a claim if "the district court had dismissed all claims over which it had original jurisdiction....").

The Clerk is directed to close this case.

**SO ORDERED.**

Hartford, Connecticut
April 1, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge